1998 ME 217

Donald E. SOREY

v.

Dixie H. SOREY.

Supreme Judicial Court of Maine.

Submitted on Briefs Sept. 2, 1998.

Decided Sept. 23, 1998.

Martha J. Harris, Paine Lynch & Harris, P.A., Bangor, for plaintiff.

Sandra Hylander Collier, Ellsworth, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

SAUFLEY, Justice.

[¶ 1] Donald Sorey appeals from a judgment of the Superior Court (Waldo County,

*Marsano, J.*) denying his appeal from an amended divorce judgment (Belfast, *Staples, J.*) entered after appeal and remand from the Superior Court (Waldo County, *Alexander, J.*). On appeal, Mr. Sorey argues that the award of spousal support was patently unjust; that the division of marital property was erroneous; that the order to maintain Ms. Sorey as beneficiary of a life insurance policy was erroneous; and that the original judgment by the District Court should be reinstated. We affirm the judgment.

## I. Background

[¶ 2] The Soreys were married in 1962. They have three children who are now adults. In 1992, Mr. Sorey filed a complaint for divorce. Following trial, the District Court entered a divorce judgment finding, inter alia, that Ms. Sorey was employed part-time as a real estate broker, earning between $10,000 and $13,000 per year, "with a significant earning potential if she would accept full-time employment," and that she "suffer[ed] from a multitude of physical problems," which did not "curtail or impact upon her ability to work full time as a broker." It also found that the value of the marital home was "between $72,000 and $125,000." The court awarded Ms. Sorey $1,200 per month in spousal support for a period of two years or the death or remarriage of Ms. Sorey, whichever occurred first. The court also attempted to divide the marital property equally.

[¶ 3] After the court denied her post-trial motions, Ms. Sorey appealed the judgment to the Superior Court, which vacated the property division along with the spousal support award because of the uncertainty inherent in the court's property valuation. The court remanded the matter to the District Court for the court to establish the value of the marital home more precisely, to divide the marital property, and to award spousal support "as it deem[ed] appropriate in accordance with the provisions of law." It left the decision on whether to take additional evidence to the discretion of the District Court.

[¶ 4] Upon remand, the District Court held a hearing at which it took new evidence. In the resulting amended divorce judgment, the court found that the marital home had a value of $81,000 of which $65,000 was equity; divided the marital property; found, contrary to the findings in its first judgment, that Ms. Sorey was employed full-time, probably at her maximum potential, as a real estate broker earning approximately $10,000 per year; and ordered Mr. Sorey to pay $2,000 per month in spousal support until her death, remarriage, or cohabitation. After another limited remand for clarification, the court also ordered Mr. Sorey to maintain a life insurance policy designating Ms. Sorey as irrevocable beneficiary.

[¶ 5] Mr. Sorey appealed to the Superior Court, which denied his appeal. From that judgment, Mr. Sorey appeals.

## II. Appeal from the First Divorce Judgment

[¶ 6] We first address Mr. Sorey's contention that the Superior Court erred when it vacated the original judgment of the District Court. Ms. Sorey argues that the first decision of the Superior Court is not before us. Contrary to her contention, however, Mr. Sorey could not have immediately appealed the Superior Court's first decision, which remanded the case to the District Court, because in such cases, "[i]f the issue which the parties seek to present to this court might be affected by the action taken pursuant to the remand order, we will usually refrain from entertaining the appeal." *Wheeler v. Maine Unemployment Ins. Comm'n,* 477 A.2d 1141, 1145 (Me.1984). Therefore, this issue is now properly before us as an appeal from a final judgment. See *In re Erica B.,* 520 A.2d 342, 343–45 (Me.1987); *see also Melanson v. Matheson,* 1998 ME 117, 711 A.2d 147, 148.

[¶ 7] Nevertheless, reviewing the first divorce judgment of the District Court directly, as we do whenever the Superior Court acts as an intermediate appellate court, *see Page v. Page,* 671 A.2d 956, 957 (Me.1996), we conclude that the uncertainty of the property values contained in that judgment required that the judgment be vacated and remanded for further consideration to the District Court. Consequently, the Superior Court did not err when it did just that.

### III. Spousal Support

[¶ 8] Only if the court " 'has violated some positive rule of law or has reached a result which is plainly and unmistakenly an injustice that is so apparent as to be instantly visible without argument' " will we vacate the trial court's spousal support award. *See Ramsdell v. Ramsdell*, 1997 ME 14, ¶ 5, 688 A.2d 918, 920–21 (quoting language originally attributed to *Bryant v. Bryant*, 411 A.2d 391, 395 (Me.1980)). Mr. Sorey asserts both that the court erred as a matter of law when it set out to provide approximately equal income to the parties and that its award of $2,000 per month was unjust.

[¶ 9] We first address the court's reference to equal incomes between the parties. When the Superior Court vacated and remanded the first judgment, it noted that "the District Court was evidently attempting a relatively equal distribution of property and income." The District Court responded to that finding by including the following language in the second judgment: "It is still this court's intent to divide the marital property equally and to provide for nearly equal incomes...." Mr. Sorey argues that this exchange demonstrates that the District Court considered an improper factor—a desire to equalize the parties' incomes—when it calculated the spousal support award.

[¶ 10] If the District Court had simply set out to equalize the parties' incomes, without regard to the statutory factors, Mr. Sorey's argument would be more compelling. Here, however, the resulting similar incomes are a consequence of the court's application of the statutory factors to the facts before it. Among the factors the court was required to consider were "[t]he length of the marriage," "[t]he ability of each party to pay," "[t]he income history. and income potential of each party," and "[t]he standard of living of the parties during the marriage." 19 M.R.S.A. § 721(1) (repealed, effective Oct. 1, 1997).[1] The court was also authorized to consider "[a]ny other factors the court consider[ed] appropriate." *See id.* § 721(1)(O).

[¶ 11] These factors provide a trial court with extremely broad discretion to do justice in individualized circumstances, but do not provide explicit guidance on what the court should do in specific circumstances.[2] While it is axiomatic that a court must do justice and .act reasonably, in the context of spousal support determinations neither of these concepts is susceptible of explicit delineations that will assure justice in all cases. The extraordinary range of factual differences among cases in which spousal support awards are sought requires flexibility in the application of the statutory considerations. The court must therefore use its best judgment in applying the statutory factors in a fashion that will do justice under the circum-

---

1. This section was repealed and replaced by a comprehensive rewriting of the Domestic Relations law. *See* P.L.1995, ch. 694, § B–2 (effective Oct. 1, 1997). The complete list of factors the court was required to consider under the applicable statute were as follows:

   A. The length of the marriage;
   B. The ability of each party to pay;
   C. The age of each party;
   D. The employment history and employment potential of each party:
   E. The income history and income potential of each party;
   F. The education and training of each party;
   G. The provisions for retirement and health insurance benefits of each party;
   H. The tax consequences of the division of marital property, including the tax consequences of the sale of the marital home, if applicable;
   I. The health and disabilities of each party;
   J. The tax consequences of an alimony award;
   K. The contributions of either party as a homemaker;
   L. The contributions of either party to the education or earning potential of the other party;
   M. Economic misconduct by either party resulting in the diminution of marital property or income;
   N. The standard of living of the parties during the marriage; and
   O. Any other factors the court considers appropriate.

   The current version of the spousal support statute set out at 19–A M.R.S.A. § 951(1) (1998) is identical to former section 721 except that it replaces the term "alimony" with the phrase "spousal support."

2. See generally John C. Sheldon & Nancy Diesel Mills, *In Search of a Theory of Alimony*, 45 Me L.Rev. 283 (1993). The authors note that "anyone who reads the [alimony] statute looking for a *reason* for awarding₁ alimony will search in vain." *Id.* at 284.

stances before it. For this reason, a "divorce court is vested with broad powers to order one spouse to pay [spousal support] to the other if the amount is reasonable and takes into account the paying spouse's ability to pay." *Gray v. Gray,* 609 A.2d 694, 698 (Me. 1992) (citing *Jacobs v. Jacobs,* 507 A.2d 596, 600 (Me.1986)).

[¶ 12] Here the trial court considered the factors listed under the applicable statute and expressly found, *inter alia,* that the parties had been married for over 31 years;[3] that Mr. Sorey has an income of $60,700; that Mr. Sorey's present wife's income and resources were sufficient, although barely so, to meet her own needs;[4] that Ms. Sorey's income was $10,000 per year; that "she has reached her maximum potential as a real estate broker"; and that "her education and training do not admit to a higher income potential."[5] The court was also cognizant of the tax consequences of its order and the significant impact that the award of spousal support would have on Mr. Sorey's finances.

[¶ 13] When the court has appropriately considered the factors established by the Legislature, no positive rule of law prohibits a court from considering the justice or fairness of equalizing income between the parties in its determination of a spousal support award. *See generally Beattie v. Beattie,* 650 A.2d 950, 952 (Me.1994) (dicta) ("While a court need not divide ... income equally, it must do so equitably."). Here, it was within the court's discretion to conclude that a reasonable and just award of spousal support would be one that provided for incomes that were approximately equal.

[¶ 14] Mr. Sorey also argues that the evidence was insufficient to support an award of $2,000 per month in spousal support and that the award was patently unjust. However, "[a]s long as there is rational or credible evidence in the record supporting the divorce court's decision, the judgment will not be overturned on appeal." *Knight v. Knight,* 680 A.2d 1035, 1037 (Me.1996). The court had before it evidence of Ms. Sorey's needs, Mr. Sorey's ability to pay, and the history of the parties' lifestyle during their lengthy marriage. Mr. Sorey does not persuasively assert that he cannot pay the awarded spousal support. Rather, he contends that the court erroneously accepted Ms. Sorey's testimony regarding her current needs and that her income potential is greater than the court determined it to be. Where there is competent evidence in the record to support the court's findings, we will not disturb the factual findings of the court. *See Pongonis v. Pongonis,* 606 A.2d 1055, 1057–58 (Me.1992). Based on those factual findings, the award of spousal support fell within the broad discretion accorded to the court.

[¶ 15] Finally, we discern no error in the court's valuation and distribution of the marital property, or in its order requiring Mr. Sorey to maintain a life insurance policy designating Mrs. Sorey beneficiary until she remarries, cohabits, or predeceases Mr. Sorey.

The entry is:

Judgment affirmed.

---

3. The court made specific findings regarding each factor in its first divorce judgment. Those findings were implicitly restated in the amended judgment to the extent not deleted or amended. Because of the potential for confusion, it would be a better practice for the court to reissue its findings with the changes incorporated.

4. During the extended pendency of these proceedings, the trial court separately granted a divorce judgment to the parties. Neither party has challenged that process, and we are not called upon to address it here.

5. The court made explicit findings regarding Ms. Sorey's financial needs in its first judgment but deleted those findings and made no such explicit findings in its amended judgment. Where no request for findings was made, we will assume that the court found that the amount awarded was necessary to meet her needs. *See Murray v. Murray,* 529 A.2d 1366, 1368 n. 1 (Me.1987), *cited with approval in Bayley v. Bayley,* 602 A.2d 1152, 1154 (Me.1992).